

PETERS & ASSOCIATES
ENGINEERS, INC.

February 10, 2014

Mr. John Ogles
Ogles Law Firm, P.A.
200 South Jeff Davis
P.O. Box 891
Jacksonville, AR 72076

Re:
TED CHANDLER AND MARTHA CHANDLER PLAINTIFFS
NO. 3:12-CV-00104-BRW

Dear Mr. Ogles:

As requested, I have reviewed various documents and information related to a single-vehicle collision that occurred on Interstate Highway I-40 on January 18, 2011 at approximately 5:48AM near Log Mile 281.6 in Crittenden County, Arkansas.

Information and documents reviewed as a part of my investigation include those summarized in the Appendix of this letter.

The site of the collision was located within an established roadway construction work zone. The construction work zone was established in relation to Arkansas State Highway and Transportation Department Job No. 110492, F.A.P. No. IM-40-5(143)277 by the contractor: APAC-Tennessee, Inc.

The construction contract (2) under which work was being performed was between Arkansas State Highway Commission and APAC-Tennessee, Inc., executed January 2, 2009. Construction under that contract requires that APAC-Tennessee, Inc. conform to the following:

- Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003.
- Construction Plans (Job No. 110492, F.A.P. No. IM-40-5(143)277 – Crittenden County).
- Supplemental Specifications.
- Special Provisions.
- Proposal Form and Schedule of Items.
- Manual on Uniform Traffic Control Devices, Latest Edition (2009) (MUTCD).

Section 102 of Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003 (3) includes the following as a requirement of the Contractor: *"102.06 Examination of Plans, Specifications, Special Provisions, and the Site of the Work. The Department will provide full, complete, and accurate plans and specifications giving such directions as will enable any competent mechanic or contractor to carry them out. The bidder is expected to examine carefully the site of the proposed work, the proposal, plans, specifications, supplemental specifications, special provisions, and contract forms before submitting a proposal. The submission of a bid shall be*

5507 RANCH DRIVE - SUITE 205   LITTLE ROCK, ARKANSAS 72223   (501) 868-3999   FAX: (501) 8

EXHIBIT "D"

Mr. John Ogles
February 10, 2014
Page 2

*considered prima facie evidence that the bidder has made such examination and is satisfied as to the conditions to be encountered in performing the work and as to the requirements of the plans, specifications, supplemental specifications, special provisions, and contract."* Thus the obligation rests with the Contractor to know conditions to be encountered in performing the work per the requirements of the plans and other contract documents.

The construction contract also includes various Special Provisions which set out requirements associated with the particular construction job. For Job No. 110492, F.A.P. No. IM-40-5(143)277. The following are included as special provisions related to maintenance of traffic.

SPECIAL PROVISION JOB 110492 MAINTENANCE OF TRAFFIC
*"All traffic control devices shall be in accordance with the details shown in the plans or on Standard Drawings TC-1, TC-2, TC-3, TC-4 and TC-5. The Contractor will be responsible for furnishing, placing, maintaining, relocating and subsequent removal of all traffic control devices within the limits of the project."*

SPECIAL PROVISION JOB 110492 TRAFFIC CONTROL DEVICES IN CONSTRUCTION ZONES
This special provision provides for Portable Changeable Message Signs to be used. This special provision provides the Contractor the means of communicating to motorists specific information concerning construction activities of the Contractor and to alert motorists of conditions which may require special action in the work zone.

SPECIAL PROVISION JOB 110492 WORK ZONE INFORMATION SYSTEM
This special provision provides for a Work Zone Information System (WIS) to be operational before any construction activities that require the reduction of existing lane or shoulder widths and until all construction work has been completed, or at the direction of the Engineer. The WIS shall be in operation 24 hours a day, 7 days a week.

Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003 (3) includes the following maintenance of traffic requirements:

**104.05 Maintaining Traffic.** *"Unless otherwise provided, the road, while undergoing improvements, shall be kept open by the Contractor to all traffic. When so provided on the plans, the Contractor may bypass traffic over an approved detour route. The Contractor shall keep the portion of the project being used by public traffic, whether it is through or local traffic, in such condition that will permit the safe, continuous flow of two-way traffic at all times. When a part of the plans or when approved by the Engineer, areas where the nature of the work restricts or prohibits two-way flow, one-way operation may be maintained by using flaggers or timed signalization. The Contractor shall also provide and maintain in a safe condition temporary approaches or crossings and intersections with trails, roads, streets, businesses, parking lots, residences, garages, farms, etc. The Contractor shall bear all expense of maintaining traffic over the section of road undergoing improvement, and of constructing and maintaining such approaches, crossings, intersections, and other features as may be necessary, without direct compensation, unless a pay item for this work is included in the Contract."*

**107.07 Public Safety and Convenience.** *"The Contractor's work shall at all times be conducted so as to assure the least possible obstruction to traffic. The safety and convenience of the general public and the residents along the highway and the protection of persons and property shall be provided for by the Contractor as specified under Subsection 104.05 and Sections 603 and 604, as applicable."*

Mr. John Ogles
February 10, 2014
Page 3

The Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003 (3), Section 603, MAINTENANCE OF TRAFFIC, includes the following as a requirement of the Contractor:

**603.01 Description.** *"This item shall be accomplished according to the plans, this specification, Subsections 104.05 and 107.07, and the MUTCD. It is also applicable to the furnishing, installing, maintaining, and removal of Temporary Culverts and Temporary Bridge Structures and to those traffic control devices and operations required to delineate temporary hazards that are a result of the Contractor's operations and which are not otherwise specified on the plans.*

*The Contractor shall maintain the existing roads, including shoulders, bridges, and culverts, within the limits of the project from the date work is begun until the project has been completed and accepted. This maintenance of existing roads, including shoulders, bridges, and culverts, is the ordinary day to day maintenance, including minor repairs. Major repairs or reconstruction of existing roads, including shoulders, bridges, and culverts, will be the responsibility of the State, County, or City, unless such are made necessary by the Contractor's operations.*

*The Contractor shall provide, under the item of Maintenance of Traffic, those traffic control devices and operations required to delineate temporary hazards that are a result of Contractor operations. When the pay item of Maintenance of Traffic is not included in the Contract, the Contractor shall perform operations according to Subsection 104.05 and this Section. Full compensation for this work will be considered included in the contract unit prices bid for the various items of the Contract.*

*The Contractor shall provide a competent traffic control supervisor for the project. When the pay item Traffic Control Supervisor is not included in the Contract, the work required will not be paid for separately, but full compensation therefor will be considered included in the contract lump sum price bid for Maintenance of Traffic, or, if Maintenance of Traffic is not included in the Contract as a pay item, included in the contract unit prices bid for the various items of the Contract."*

**603.02 Construction Requirements. (a) Maintenance of Traffic.** *"Maintenance of Traffic shall be accomplished by the Contractor in an expeditious manner to preserve the integrity of the traveled way and shoulders and to protect traffic from temporary hazards created by Contractor operations.*

*The delineation of temporary hazards shall include the placement of any traffic control devices that are necessary for the protection from, and/or delineation of, such objects as open trenches or holes, stationary objects, drop-offs, parked equipment, stockpiled materials, fresh oil, etc. These traffic control devices shall be placed at locations where they will provide adequate warning to the traffic, including side roads that enter the work limits. All traffic control devices used shall comply with the applicable requirements of Section 604."*

**603.02 Traffic Control Supervisor (b).** *"When the pay item Traffic Control Supervisor is included in the Contract, the traffic control supervisor shall be certified as a worksite traffic supervisor by either the American Traffic Safety Services Association (ATSSA) or the Arkansas Associated General Contractors, and shall be someone other than the Contractor's superintendent. The name, address, and telephone number of the traffic control supervisor shall be furnished to the Engineer at the pre-construction conference. The Contractor shall advise the Engineer of any changes to the contact information for the traffic control supervisor or changes in person designated as the traffic control supervisor.*

*The traffic control supervisor shall:*

- *Perform or supervise the performance of the inspections required in Section 604;*
- *Prepare, sign, and submit to the Engineer the certification of inspection required in Section 604;*
- *Train and supervise flaggers and pilot car operators, as needed;*

Mr. John Ogles
February 10, 2014
Page 4

- *Review the project for additional traffic control measures needed to delineate hazards due to the Contractor's operations;*
- *Correct all traffic control deficiencies;*
- *Provide emergency maintenance of traffic control devices as needed."*

The Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003 (3), Section 604, TRAFFIC CONTROL DEVICES IN CONSTRUCTION ZONES, includes the following as a requirement of the Contractor:

**604.01 Description.** *"This item consists of furnishing, installing, maintaining, moving from one location to another, and removing traffic control devices as specified on the plans according to this Section, Subsections 104.05 and 107.07, and the MUTCD. Traffic control devices shall include, but not be limited to: traffic cones, signs, vertical panels, barricades, barrier units, traffic drums, advance warning arrow panels, portable changeable message signs, pavement markings, and removal of pavement markings."*

**604.03 Construction Requirements.** *"(a) General. Traffic control devices shall be installed and maintained in good condition and in compliance with the plans, this specification, and the MUTCD. The Contractor shall certify weekly to the Engineer that all traffic control devices in use have been inspected on at least a daily basis and that any devices failing to comply with the requirements set out herein or on the plans were corrected. The certification shall contain, at a minimum, the following information:*

- *Date and time of inspection;*
- *Name of person performing the inspection;*
- *Any deficiencies found; and*
- *Measures taken to correct the deficiencies.*

*At least one inspection weekly shall be performed at night. The work involved in performing the required inspections and furnishing the certification will not be paid for separately, but full compensation therefor will be considered included in the contract unit prices bid for other items of the Contract.*

*Traffic control devices shall be constructed according to the plans. The Contractor shall be responsible for properly locating the traffic control devices according to the plans, or as directed.*

*The Contractor shall accomplish the items of work required for traffic control through construction zones in a logical sequence throughout the duration of the project. Any item constructed prematurely will not be accepted until the item is required for its intended use.*

*All traffic control devices shall be constructed and maintained in such manner that the devices will be fully visible, intact, and erect for the entire duration of their intended use and shall be removed from the project when their use is no longer required. All devices shall remain the property of the Contractor unless otherwise specified.*

*(b) Signs. Regulatory, warning, and guide signs, and vertical panels of a permanent nature, shall be placed and maintained in a vertical position as shown on the plans or as directed. Each device will be considered as a unit, including the sign and support assembly as shown on the plans.*

*After the project has been declared substantially complete by the Engineer, the Contractor shall either cover or remove the advance warning signs. In the event that work is required after the project is declared substantially complete, the Contractor will uncover the advanced warning signs or provide appropriate signs and traffic control devices needed to perform the work. Additional signs or traffic control devices required for such work will not be measured or paid for separately, but full*

Mr. John Ogles
February 10, 2014
Page 5

*compensation therefor will be considered included in the contract unit price bid for Maintenance of Traffic.*"

Requirements of the contract (2) related to Maintenance of Traffic in Section 603 are reinforced on Construction Plans for Arkansas State Highway and Transportation Department Job No. 110492, F.A.P. No. IM-40-5(143)277, July 4, 2008 (1), Sheets 259-263 of 300: "Standard Traffic Controls for Highway Construction Standard Drawing TC-1 – TC-5" which includes provision for conformance with the Manual on Uniform Traffic Control Devices (MUTCD).

A letter dated February 23, 2009 from Arkansas State Highway and Transportation Department provided conditional approval of an alternate Sequence of Construction proposed by APAC-Tennessee, Inc., which differed from the Sequence of Construction set out in the plans and contract. This letter also placed responsibility on APAC-Tennessee, Inc. to provide traffic control plans to accomplish the work as proposed by them at no cost to Arkansas State Highway and Transportation Department, and that APAC-Tennessee, Inc. be responsible for any errors or problems arising from their sequence of construction. (29).

Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003, (3) Section 604.03 requires the Contractor to certify weekly to the Arkansas State Highway and Transportation Department Resident Engineer that all traffic control devises in use on the project have been inspected and deficiencies have been corrected. Section 604.03 states:

*The Contractor shall certify weekly to the Engineer that all traffic control devices in use have been inspected on at least a daily basis and that any devices failing to comply with the requirements set out herein or on the plans were corrected. The certification shall contain, at a minimum, the following information:*

- *Date and time of inspection;*
- *Name of person performing the inspection;*
- *Any deficiencies found; and*
- *Measures taken to correct the deficiencies.*

*At least one inspection weekly shall be performed at night.*

There is record of compliance by the Contractor with this certification requirement from the beginning of the job until the end of 2010. There is no record of compliance from the beginning of 2011 (including none for the week of the January 18, 2011 Chandler collision) until a certification dated February 20, 2012.

Arkansas State Highway Commission Contract with APAC-Tennessee, Inc. for Job No. 110492, F.A.P. No. IM-40-5(143)277 (2) included SPECIAL PROVISION JOB 110492 WORK ZONE INFORMATION SYSTEM. This special provision provides for a Work Zone Information System (WIS) to be operational before any construction activities that require the reduction of existing lane or shoulder widths and until all construction work has been completed, or at the direction of the Engineer. The WIS shall be in operation 24 hours a day, 7 days a week.

Numerous daily diary entries in the Arkansas State Highway and Transportation Department Daily Project Diary (10, 11) indicate this Work Zone Information System was often non-functional. The Daily Project Diary entry for January 23, 2011 (11) (Hwy Docs 11.7.12 0017) indicates "No Log Record" for the Work Zone Information System for January 17, 2011, the day before the Chandler collision.

Mr. John Ogles
February 10, 2014
Page 6

There is record in the John Alford 2009 Diary, (Alford 2009 Diary Bates Stamped (02921604).PDF), (ALFORD00001 – ALFORD00406) (20) of almost daily videos made by the APAC-Tennessee, Inc. Traffic Control Supervisor of the construction zone during 2009. No record was found in the John Alford 2010 Diary, (Alford 2010 Diary Bates Stamped (02921613).PDF), (ALFORD00407 – ALFORD00814) (21) of daily videos having been made by APAC-Tennessee, Inc. Traffic Control Supervisor of the construction zone after September 24, 2010 (21) (ALFORD00695). In the John Alford 2011 Diary, (Alford 2011 Diary Bates Stamped (02921618).PDF), (ALFORD00815 – ALFORD01222) (22) (ALFORD00853) on January 18, 2011, the date of the Chandler collision, there was an entry that drums were checked at 5:15 AM and that two drums were down on I-40 and five drums down on I-55 at the taper. The locations were not specified. No record was made in the Traffic Control Supervisor's 2011 Daily Diary (22) of a video having been made of the construction zone on January 18, 2011, the date of the Chandler collision. There is not a clear indication if these video records were ever reviewed by APAC-Tennessee, Inc. officials after they were taken to determine if there were deficiencies in the traffic control in place or if additional traffic control devices should be employed (6) THE DEPOSITION TRANSCRIPT OF JOHN ALFORD, TRAFFIC CONTROL SUPERVISOR, APAC-TENNESSEE, JANUARY 17, 2014, (p84, L19 to p85 L11).

As a result of my review of the information and documents related to this matter, I have determined that the conditions at the site of the Chandler collision, on the date of the collision, presented for motorists a temporary condition of hazard. This temporary condition of hazard was created at a location adjacent to the inside westbound I-40 travel lane when traffic control devices were placed to effect lane closure of two travel lanes approaching the Mound City Road (Hwy 131) exit (Exit 281) and per the alternate Sequence of Construction proposed by APAC-Tennessee, Inc. The two-lane closure required that vehicles shift to the left and travel in the single inside lane, adjacent to a paved median that separated the eastbound and westbound lanes of I-40. It was in this vicinity of the two-lane closure that a single-vehicle collision occurred on Interstate Highway I-40 on January 18, 2011 at approximately 5:48AM. The vehicle involved in this collision was that driven by Plaintiff Ted Chandler. The Vehicle Collision Report No.: 180111025, January 18, 2011 (4) indicated the driver went off the road to the left onto the paved median, continued to travel westbound, then crashed at the bottom of the embankment of the bridge structure at Highway 131.

Examination of construction plans for this project (1) and photography of the vicinity of the Chandler collision (5, 19) provides insight as to the nature of the temporary condition of hazard that existed at the time of the collision. The adjacent paved median was more than sufficient in width to accommodate a normal travel lane width of twelve feet and the paved median existed for a distance of more than 500 feet in advance of a metal guardrail that preceded by approximately 300 feet the end of the railing on the bridge over Hwy 131. Particularly at night, the paved median could easily have been mistaken by a motorist as an area intended for vehicular travel, especially with traffic control devices (signs, traffic barrels and variable message signs) present on the right edge of westbound I-40, intended to shift vehicles to the left to effect the closure of two travel lanes.

This area of temporary condition of hazard at the paved median could easily have been cordoned off from vehicular travel with the use of common construction zone traffic control devices used by APAC-Tennessee, Inc. throughout the job. It was the duty of APAC-Tennessee, Inc. to effect such safety measure necessary to cordon off the paved median in advance of the Mound City Road bridge structure to protect motorists from the hazard where the I-40 westbound lane closure was implemented by APAC-Tennessee, Inc. The requirement for the Contractor relative to this is found in:

Mr. John Ogles
February 10, 2014
Page 7

Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003, (3) Section 603.01:
*"The Contractor shall provide, under the item of Maintenance of Traffic, those traffic control devices and operations required to delineate temporary hazards that are a result of Contractor operations."*

Further provision is contained in Section 603.02:
*"The delineation of temporary hazards shall include the placement of any traffic control devices that are necessary for the protection from, and/or delineation of, such objects as open trenches or holes, stationary objects, drop-offs, parked equipment, stockpiled materials, fresh oil, etc."*

Arkansas State Highway Commission Contract with APAC-Tennessee, Inc. for Job No. 110492, F.A.P. No. IM-40-5(143)277 (2) included a line item payment for Traffic Control Supervisor, per Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003 603.02 (b).

Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003, (3) Section 604.03 calls out that among the responsibilities of the Traffic Control Supervisor is to review conditions of the project for additional traffic control needs: 604.03 Construction Requirements. *"(a) General. "Review the project for additional traffic control measures needed to delineate hazards due to the Contractor's operations."*

Provisions of the construction contract (2) agreement between Arkansas State Highway Commission and APAC-Tennessee, Inc. for Job No. 110492, F.A.P. No. IM-40-5(143)277 address avoidance and / or elimination of temporary conditions of hazard and provide for construction measures and the application of traffic control measures that, when applied, would have mitigated the temporary condition of hazard at the paved median where the I-40 westbound lane closure was implemented by APAC-Tennessee, Inc.

If provisions of the construction contract (2) between Arkansas State Highway Commission and APAC-Tennessee, Inc. had been complied with, motorists traveling westbound on I-40 approaching the Mound City Road bridge structure, within the construction work zone, would not have been exposed to the temporary condition of hazard at the paved median where the I-40 westbound lane closure was implemented by APAC-Tennessee, Inc.

Sincerely,
PETERS & ASSOCIATES, ENGINEERS, INC.

[Seal: STATE OF ARKANSAS REGISTERED PROFESSIONAL ENGINEER ERNEST J. PETERS No. 4682]

Ernest J. Peters, P.E.            2-10-14
President

Mr. John Ogles
February 10, 2014
Page 8

**Appendix**

DOCUMENTS REVIEWED
By Ernest J. Peters, P.E.

1 - Construction Plans for Arkansas State Highway and Transportation Department Job No. 110492, F.A.P. No. IM-40-5(143)277, July 4, 2008.

2 - Arkansas State Highway Commission Contract with APAC-Tennessee, Inc. for Job No. 110492, F.A.P. No. IM-40-5(143)277.

3 - Arkansas State Highway and Transportation Department Standard Specifications for Highway Construction, Edition of 2003.

4 - Arkansas Uniform Motor Vehicle Collision Report No.: 180111025, January 18, 2011.

5 - Various digital photographs of accident vicinity by Michael Lenahan, January 21, 2011.

6 - THE DEPOSITION TRANSCRIPT OF JOHN ALFORD, TRAFFIC CONTROL SUPERVISOR, APAC-TENNESSEE, JANUARY 17, 2014.

7 - MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES - FOR STREETS & HIGHWAYS 2009 EDITION.

8 - THE DEPOSITION TRANSCRIPT OF MAX WATSON, ENVIRONMENTAL HEALTH SAFETY MANAGER, APAC-TENNESSEE, JANUARY 17, 2014.

9 - THE DEPOSITION TRANSCRIPT OF PAUL JEFFREY ADAMS, RESIDENT ENGINEER FOR THE HIGHWAY DEPARTMENT, OCTOBER 18, 2012.

10 - Arkansas State Highway and Transportation Department Daily Project Diary, June 1, 2010 through November 29, 2010 (Hwy Docs 11.15.12 0024 – 0229).

11 - Arkansas State Highway and Transportation Department Daily Project Diary, December 1, 2010 through February 28, 2011 (Hwy Docs 11.7.12 0001 – Hwy Docs 11.7.12 00023).

12 - State Highway and Transportation Department Daily Project Diary January 10, 2011 January 31, 2011.

13 - Arkansas State Highway and Transportation Department 7-15-09 Change Order and Related Documents related to construction phasing changes (JACOBS000001 – JACOBS0000015)

14 - Arkansas State Highway and Transportation Department documents (CHANDLER 001924 – CHANDLER 002740).

15 - Arkansas State Highway and Transportation Department documents (CHANDLER 002741 – CHANDLER 003392).

Mr. John Ogles
February 10, 2014
Page 9

16 -   Arkansas State Highway and Transportation Department documents (CHANDLER 003393 – CHANDLER 004519).

17 -   Arkansas State Highway and Transportation Department Standard Drawings TC-1 – TC3.

18 -   An aerial photograph by Aerial Innovations (I40I55AR040809171.jpg).

19 -   Google Earth Aerial Photography.

20 -   John Alford 2009 Dairy, (Alford 2009 Diary Bates Stamped (02921604).PDF), (ALFORD00001 – ALFORD00406).

21 -   John Alford 2010 Dairy, (Alford 2010 Diary Bates Stamped (02921613).PDF), (ALFORD00407 – ALFORD00814).

22 -   John Alford 2011 Dairy, (Alford 2011 Diary Bates Stamped (02921618).PDF), (ALFORD00815 – ALFORD01222).

23 -   Larry McDonald 2009 Diary, (Super 2009 Diary Bates Stamped (02935563).PDF), (SUP.DIARY00001 - SUP.DIARY00404).

24 -   Larry McDonald 2010 Diary, (Super 2010 Diary Bates Stamped (02935561).PDF), (SUP.DIARY00405 - SUP.DIARY00816).

25 -   Larry McDonald 2011 Diary (Super 2011 Notebook Bates Stamped (02935565).PDF), (SUP.DIARY00817 - SUP.DIARY00933).

26 -   Arkansas State Highway and Transportation Department - APAC-Tennessee, Inc., Job No. 110492, F.A.P. No. IM-40-5(143)277, Change Orders No.: 1-51: January 26, 2009 – October 7, 2011.

27 -   APAC JOB FOLDER, APAC-Tennessee, Inc. 2009 Traffic Control Inspection Reports, Job No. 110492, F.A.P. No. IM-40-5(143)277110492 2009 Traffic Control Inspection Reports.PDF.

28 -   APAC JOB FOLDER,APAC-Tennessee, Inc. 2010 Traffic Control Inspection Reports, and for week ending February 20, 2012, (none for 2011), Job No. 110492, F.A.P. No. IM-40-5(143)277110492110492 2010 - End Traffic Control Inspection Reports.PDF.

29 -   APAC JOB FOLDER\473146 I-40 - I-55 INTRCHG MOD (10492 AHTD Conditional approval of Rev Seq of Const.PDF).

IN THE CIRCUIT COURT OF CONWAY COUNTY, ARKANSAS
SECOND DIVISION
CLINTON GILBERT, INDIVIDUALLY,
AS ADMINISTRATOR OF THE ESTATE
OF ELIZABETH GILBERT, DECEASED,
AND AS FATHER AND NEXT FRIEND OF
ALLISON GILBERT, a minor PLAINTIFF
VS. NO. CV-2011-199
ROGERS GROUP, INC., TIME
STRIPING, INC., RICKEY G.
EMERSON and MIKE SMITH, CONWAY
COUNTY SHERIFF In His Official
Capacity DEFENDANTS

Mr. Bruce McMath
Attorney at Law
McMath Woods, P.A.
711 West Third Street
Little Rock, AR  72201

Deposition and trial testimony:

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
TWELFTH DIVISION
ARKANSAS STATE HIGHWAY COMMISSION   PLAINTIFF
v.      CASE NO. CV 2010-5401
TWO FINANCIAL OPERATING ASSOCIATES
LIMITED PARTNERSHIP, A NEW MEXICO
LIMITED PARTNERSHIP; SOUTHERN FARM
BUREAU LIFE INSURANCE CO., MORTGAGEE;
CERTAIN LANDS BEING 0.43 ACRES, MORE OR LESS, IN
PULASKI COUNTY, ARKANSAS; AND ANY PERSONS
OR ENTITIES CLAIMING AN INTEREST THEREIN         DEFENDANTS

Mr. Mike Shannon
Attorney at Law
Quattlebaum, Grooms, Tull & Burrow PLLC
111 Center Street
Suite 1900
Little Rock, AR 72201

Ernest J. Peters
Hourly rate: $175.00
With an hourly rate of: $262.50 for deposition and testimony.

RESUME

ERNEST J. PETERS, P.E.
President
Peters & Associates Engineers, Incorporated

EDUCATION: B.S. Civil Engineering, Ohio University, 1971

    Graduate Study: FHWA Fellow, Civil Engineering and
        Industrial Engineering, Transportation
        Engineering Specialization, 1974

REGISTRATION:   Professional Engineer,

| | | |
|---|---|---|
| ARKANSAS | KANSAS | NORTH CAROLINA |
| COLORADO | KENTUCKY | OKLHOMA |
| FLORIDA | LOUISIANA | SOUTH CAROLINA |
| IDAHO | MISSISSIPPI | TENNESSEE |
| ILLINOIS | MISSOURI | TEXAS |
| INDIANA | NEBRASKA | WYOMING |
| IOWA | NEW MEXICO | |

EXPERIENCE:

Peters & Associates Engineers, Inc.

Mr. Peters, in association with other professionals, formed Peters & Associates, Engineers in 1981. He has provided professional engineering and technical services in areas including Parking Studies, Traffic and Transportation Engineering, Highway Safety, Commercial Site Development, Residential and Commercial Subdivision and Computer Applications as well as more traditional streets and drainage Civil Engineering projects. Mr. Peters has done research and provided expert testimony in Traffic Engineering in numerous State Administrative Hearings as well as Circuit and Federal courts. He has provided training to local government engineering/public works officials on traffic safety and traffic control principals and practices.

PAWA, Incorporated

While serving as manager in PAWA's Little Rock office for three years, Mr. Peters participated in a variety of consulting engineering projects for both public and private sector clients, including preparation of plans, technical and functional specifications, construction management and implementation of a major computer controlled traffic signal system, statewide traffic engineering and traffic safety assistance to local

Ernest J. Peters, P.E.
Resume
Page 2

governments, commercial site development studies and designs. Mr. Peters also had key roles in urban land use planning studies and in computer simulation modeling projects.

City of Little Rock, Arkansas

While serving the City of Little Rock for four years, Mr. Peters held the positions of Research and Development Engineer, Chief of Engineering Research and Design and Director of Engineering. In these positions, he was responsible for all traffic and civil engineering design and construction activities for all city street and drainage improvements, and the review of all subdivision and site development plans. Mr. Peters also served the Little Rock Regional airport for nine months, in charge of engineering and planning.

Athens County, Ohio

Assistant County Engineer, responsible for bridge design and inspection of highway-railroad grade crossing protection, county highway design and construction supervision. Developed and implemented a County Roadway Inventory and Condition Rating System for pavement, drainage and traffic control
facilities.

ORGANIZATIONS:   Institute of Transportation Engineers