IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**TED CHANDLER AND MARTHA CHANDLER**          **PLAINTIFFS**

**VS.**                                   **NO. 3:12-CV-00104-BRW**

**JACOBS ENGINEERING GROUP, INC., ET AL.**          **DEFENDANTS**

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF DAUBERT
MOTION TO EXCLUDE THE TESTIMONY OF SCOTT L. TURNER

## I. INTRODUCTION

Defense has designated Scott L. Turner as a "Commercial Motor Vehicle" expert who possesses "nearly 25 years experience in the Transportation Industry" and bases his opinion upon "what is good and safe practices in the Transportation Industry." See Exhibit "A" to Plaintiffs' *Daubert* Motion to Exclude the Testimony of Scott L. Turner, Report of Scott L. Turner and Exhibit "B" to Plaintiffs' *Daubert* Motion to Exclude the Testimony of Scott L. Turner, Rebuttal Report of Scott L. Turner. The following Opinions are expressed in his initial report:

> Based upon the foregoing analysis, as a Commercial Motor Vehicle expert possessing nearly 25 years experience in the Transportation Industry and based upon what is good and safe practices in the Transportation Industry, I have come to form the following opinions as to the CMV crash that caused injury to Plaintiff which occurred at Interstate 40 Westbound, West Memphis, Arkansas, MM 281.6 on Tuesday, January 18, 2011 / approximately 5:48 AM. I express these opinions with a reasonable degree of certainty and probability:
>
> 1. It is the undersigned's opinion that APAC clearly followed all prescribed regulatory requirements as to proper installation, maintenance and application to the advanced warning area in compliance with the MUTCD. As such APAC's compliance with all safety practices as prescribed was in no way contributory to the CMV crash that occurred on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40

1

Westbound, West Memphis, Arkansas, MP 281.6.

2. It is the undersigned's opinion that inattentive driving and/or fatigued driving was a contributing factor to the CMV crash that occurred on Tuesday, January 18, 2011, at approximately 5:48 AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

3. It is the undersigned's opinion that Chandler ignored the advance warning area traffic control devices. The fact that Chandler obeyed the scalehouse sign requiring him to stop for the "OPEN" scalehouse, but suggests that the much larger illuminated and alternating flashing advisory sign warning of two right lanes being closed is highly questionable. This is in addition to the plethora of additional signs warning of the lane closures ahead. The signage placement and maintenance by APAC of all advanced warning area signage was in no way a contributing factor to the CMV crash that occurred on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

4. It is the undersigned's opinion that driving too fast for conditions was a contributing factor to the CMV crash that occurred on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6

5. It is the undersigned's opinion that Chandler had unlawfully disobeyed both the yellow fogline intended to keep him in the travel lanes, and ignored or was unaware of the rumble strips when leaving the travel portion of l-40. Chandler's not utilizing the traffic control markings and aids was a contributing factor to the CMV crash that occurred on Tuesday, January 1 8, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

6. It is the undersigned's opinion that the only person that could have prevented this crash was that of Teddy Chandler. His actions and his actions alone are the only contributing factor to the CMV crash that occurred on Tuesday, January 18, 2011, at approximately 5:48 AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

7. It is the undersigned's opinion that had Chandler applied his training techniques that he learned both at the time of his CDL issuance and during the ICC Driver Orientation Training, he would have not caused the subject crash. Chandler's failure to apply his learned knowledge was a contributing factor to the CMV crash that occurred on Tuesday, January I 8, 201 1, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

8. It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR as it pertains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "safe operations regulations " was willfully reckless and endangering of others. His failure to comply with this critical point of Required knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 2011, at

approximately 5:48 AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

9.  It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR as it pertains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "safety control systems" was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

10. It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR as it pertains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "visual search" was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

11. It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR  as it pertains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "speed management"  was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 201 1, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

12. It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR as it pertains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "night operation" was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281 .6.

13. It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR as it pertains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "extreme driving conditions" was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 201 1, at approximately 5:48AM on Interstate 40 Westbound, West Memphis,

Arkansas, MP 281.6.

14. It is the undersigned's opinion that Chandler's lack of understanding of the Required Knowledge, specifically "Hazard perceptions" was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 1 8, 20 11,at approximately 5:48 AM on Interstate 40 West bound, West Memphis, Arkansas, MP 28 l.6.

15. It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR as it pertains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "emergency maneuvers" was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 201 1, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281 .6.

16. It is the undersigned's opinion that Chandler's lack of understanding of the FMCSR as it pe11ains to his direct responsibilities regarding the 20 points of Required Knowledge, specifically "fatigue and awareness" was willfully reckless and endangering of others. His failure to comply with this critical point of Required Knowledge is nothing less than his own careless disregard for the rights and safety of others as he thought nothing of risking the motoring public on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

17. It is the undersigned's opinion that Chandler unnecessarily and unfairly risked the rights and safety of others by his actions of how he operated his CMV in complete careless disregard for the Federal Motor Carrier Safety Regulations. His disregard for the safety regulations ignorance to the same, in spite of him considering himself a "professional" is a willful disregard to the rights and safety to others. Chandler's careless disregard was a contributing factor to the CMV crash that occurred on Tuesday, .January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

18. It is the undersigned that is in agreement with Trooper Meyer as to Chandler's "careless prohibited driving" causing the crash of subject on Tuesday, January 18, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

19. It is the undersigned's opinion that Chandler's first position (before filing deposition) of observing that the ".flashing arrow sign on right side of road appeared I [he] had to merge to far left lane because of lanes closure. All other lanes closed except for far left lane" was the correct position. Later deposition testimony demands questionable credibility.

20. It is the undersigned's opinion that Chandler operated his CMV in a profit

over safety modus operandi. This MO clearly was a contributing factor to the CMV crash that occurred on Tuesday, January 18, 2011 , at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

The following opinions are expressed in his rebuttal report:

Based upon the foregoing analysis, as a Commercial Motor Vehicle expert possessing nearly 25 years experience in the Transportation Industry and based upon what is good and safe practices in the Transportation Industry, I have come to form the following opinions as to the CMV crash that caused injury to Plaintiff which occurred at Interstate 40 Westbound, West Memphis, Arkansas, MM 281.6 on Tuesday, January 18, 2011 *I* approximately 5:48AM . I express these additional opinions with a reasonable degree of certainty and probability:

21. APAC 's application, installation of, and maintenance of the Advanced Warning Area, meeting the requirements of all regulatory concerns, and the MOT as approved by AHTD was in no way contributory to the CMV crash that occurred on Tuesday, January 1 8, 2011, at approximately 5:48AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 28 1.6.

22. Chandler 's failure to maintain his lane of travel by illegally crossing the improved left shoulder fogline was the final *act* that resulted in the crash. Chandler's failure to maintain his lane of travel was a contributory act to the CMV crash that occurred on Tuesday , January 18, 201 1, at approximate ly 5:48AM on Interstate 40 Westbound , West Memphis, Arkansas, MP 281.6.

23. By definition of the FMCSR regarding preventability of this crash, only Chandler was in control of that outcome. Chandler's failure to prevent the crash by operating his CMV in a reasonable fashion maintaining his skill set in high degree of alertness while operating in a construction zone with lane closures was a contributory act to the CMV crash that occurred on Tuesday, January 18, 20 11, at approximately 5:48AM on Interstate 40 Westbound , West Memphis, Arkansas, MP 28 1.6.

24. Evidence proves that literally millions of motorists safely passed through the Advanced Warning Area and did not duplicate the crash of Chandler. These motorist were of the following, but not limited to: large CMV 's professional drivers; youthful and inexperienced drivers; elderly drivers with potentially diminished cognitive and reactive skill sets; and finally, drivers that are not fluent in reading or writing the English language. This wide range of motorists not crashing, as did Chandler speaks volumes as to his pre-crash condition and/or modus operandi. Therefore, the crash caused by Chandler was nothing more or less than the fault of Chandler. Chandler himself is the only one responsible for causing the crash that occurred on Tuesday, January 18, 2011, at approximately 5:48AM on

Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

25. By careful examination of the Advanced Warning Area and Traffic Control Device placement, maintenance of the Traffic Control Plan in accordance with the MUTCD and AHTD oversight, it is the conclusion that APAC has done contributed in any way to the causation of the crash that occurred on Tuesday, January 18, 2011, at approximately 5:48 AM on Interstate 40 Westbound, West Memphis, Arkansas, MP 281.6.

Pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 578 (1993),* Plaintiffs requests that the Court order all parties, their attorneys, and their witnesses to refrain from mentioning or alluding to in any fashion whatsoever, directly or indirectly, the matters set forth herein. If counsel for any party should be of the opinion at any time during the trial that matters contained herein which the Court has ruled as inadmissible have become admissible or that the Court's ruling is unclear, it is requested that the Court order counsel to approach the bench for a discussion outside the hearing of the jury prior to mentioning such matter. Plaintiffs also request that the Court order all counsel to make the Court's ruling on the matters contained herein known to the parties and their witnesses so that the matters that the Court rules are inadmissible will not be inadvertently mentioned at trial.

## II. ARGUMENT

Fed R. Evid. 702 governs the admissibility of expert opinions and provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

6

(c) the testimony is the product of reliable principals and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Thus, under Rule 702, an expert's opinion must be based on sufficient facts and the expert must possess knowledge, skill, experience, training or education, which will help the trier of fact understand the evidence.

The United States Supreme Court has addressed the standards of admissibility for opinion testimony under Rule 702.  *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  As explained in *Daubert*, the district court must act as gatekeeper to ensure that any and all expert testimony admitted into evidence satisfies these requirements.  The United States Supreme Court held that under Rule 702 "the trial court must ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." *Daubert,* 509 U.S. at 789. The Court should insure that the  factfinding  process does not become distorted by 'expertise that is *fausse* and science that is junky."  *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 159 (Scalia, J. concurring)).

"'If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,' an expert may testify in the form of an opinion or otherwise so long as '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Vasquez v. Colores*, 648 F.3d 648, 653 (8th Cir. 2011) (quoting Fed.R.Evid. 702). In determining whether expert testimony should be admitted, the district court must decide if the expert's methodology is reliable and can be reasonably applied to the facts of the case. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012)

(internal quotation marks and citation omitted). See also *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (when considering expert testimony, a district court must ensure that all scientific testimony is both reliable and relevant). Pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the district court must conduct this initial inquiry as part of its gatekeeping function. *Watson*, 668 F.3d at 1015. *Daubert* is meant to protect juries from being swayed by dubious scientific testimony. *Id*. To satisfy the reliability requirement for admission of expert testimony, the party offering the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. *Barrett*, 606 F.3d at 980 (internal quotation marks and citation omitted).  To satisfy the relevance requirement for the admission of expert testimony, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Id See also Weitz Co. v. MH Washington*, 631 F.3d 510, 527 (8th Cir. 2011) (the district court must exclude expert testimony if it is so fundamentally unreliable that it does not assist the jury; otherwise, the factual basis of the testimony goes to the weight of the evidence). *Id*  The opinions proffered by Turner in this case fail to meet these prerequisites for admission, and his testimony should therefore be excluded.

a.  **Turner is not qualified to offer the opinions in his report**.

Scott L. Turner is simply not qualified to offer opinions in his report that are regarding the cause of the accident as he is neither an accident reconstructionist nor human factors expert.  He also, as presented as an expert, cannot testify to the ultimate issue in the case, which is before the jury, i.e. negligence.

Turner is not qualified by "knowledge, skill, experience, training or education" to offer expert opinions concerning accident reconstruction and/or human factors with regards to accidents. With regard to education, Turner has not received an undergraduate or graduate degree and has never authored any scholarly articles for peer-reviewed publications.  See Exhibit "C" to Plaintiffs' *Daubert* Motion to Exclude the Testimony of Scott L. Turner, Deposition of Scott Turner, taken in the case of *Richard E. Curley and Sandra Curley vs. United Parcel Service*, Unites States District Court, District of Massachusetts, No. 10-12266-DPW, Turner Depo 6: 17-22; 62:21-63:4.   Turner's educational background is not commensurate with the expertise that is generally required of experts in the field of vehicular accidents.  See *Wilson v. Woods*, 163 F. 3d 936, 938 (5th Cir. 1999) ("refusing to qualify witness as expert in accident reconstruction where "his 'expertise' in accident reconstruction was not greater than that of any other individual with a general scientific background...[he] had never taught accident reconstruction courses, never experimented or conducted studies in the field, and never published anything on the subject.").  *Compare Nna,* 630 F. Supp. 2d at 134-35 ("witness qualified as an expert in the field of accident reconstruction where he was a licensed professional engineer and a certified accident reconstructionist.") According to his C.V., he had one course which may have been related to investigation, not reconstruction:  "Institute of Police Technology & Management, Commercial Vehicle Crash Investigation."  Nothing in his C.V. states that he has ever studied or performed actual accident reconstruction as an expert.   In fact, with regard to professional experience, Turner's curriculum vitae emphasize investigation and instruction, not reconstruction and, certainly, not human factors related experience or training. He never worked for a road construction company

nor is he an engineer nor has he had any training on advance warning devices, traffic engineering.   His C.V. states that he has testified in only one case (the other "testimony", as reflected in his cv, was before a zoning board of a small township) and that one case was in the Court of Common Pleas in Pennsylvania. His opinion in that case was to the cause of an explosion of a tanker truck while loading, had nothing to do with accident reconstruction and human factors. Pennsylvania has also never adopted the *Daubert* standards as applicable to expert qualifications and reliability of scientific opinions.  *See* Exhibit "A", Turner's report. Also, Giannelli & E. Imwinkelried, Scientific Evidence §§ 1.06, 1.16 (4th ed. 2007). In addition, pursuant to his former deposition testimony, he is not a human factors expert, and does not have the qualification or education.  See Exhibit "C", Turner depo. pp. 17 - 19; 22-26.   He simply, by his own admission, is not an accident reconstructionist, not a human factors expert, not an engineer or expert in the field of road construction.   He simply cannot make statements that "APAC clearly followed all prescribed regulatory requirements ... in the advanced warning area in compliance with the MUTCD," when he has no experience, training or education in this field.  He cannot surmise as to inattentive driving or fatigue of Mr. Chandler, when he has no medical training or advanced degree study as to human factors and their contributions as to accidents.  Many of his opinions are based on his "expert" knowledge of the FMCSR, of which there is no demonstration that he has had any sufficient training or experience that would support his making these opinions. See Exhibit "A", Turner Report, and Exhibit "C", Turner depo. pp.  18-33, 17-40, 49-52, 57-60, 69-96, 105-108. The opinions he has made in his report would require that he be an expert in one or more

of these fields, to a degree that would satisfy the *Daubert* and Rule 702 requirements. He

is not. Therefore, his opinions should not be accepted by this Court

b. **Turner is Not qualified to give a rebuttal opinion.**

The defendant has offered Turner as an expert to rebut Ernie Peters. See Exhibit

"B", Turner Rebuttal Report. Mr. Peters' education is attached to the motion as Exhibit

"D" of Plaintiffs' *Daubert* Motion to Exclude the Testimony of Scott L. Turner, Peter

Report and C.V. To be generous, Turner is not qualified nor does he have the adequate

education or experience to rebut Mr. Peters. Any testimony by the Defendant's expert

would not be helpful to the jury. His opinion testimony would be unfairly prejudicial to

the Plaintiff. Given Defendant's lack of education and qualifications and his failure to

consider in a systematic fashion to form his opinions to refute Mr. Peters is not helpful to

the jury and should be excluded. *See Robertson v. Norton Company* 148 F3rd 905.

(1998).

c. **Turner's opinions impermissibly invade the province of the jury as to the
ultimate issue.**

Further, Mr. Turner's opinions are arguably all within the jury's knowledge or

experience, thus failing to reach the criteria established by the Federal Rules and Courts.

While an expert witness's testimony "is not objectionable just because it embraces an

ultimate issue," Fed. R. Evid. 704, opinions that "merely tell the jury what result to reach"

are not admissible. *Lee v. Andersen,* 616 F.3d 803, 809 (8th Cir. 2010) (quoting Fed. R.

Evid. 704 advisory committee's note). "The touchstone for the admissibility of expert

testimony is whether it will assist or be helpful to the trier of fact." *Id.* at 808 (quoting

*McKnight ex rel Ludwig v. Johnson Controls, Inc.,* 36 F.3d 1396, 1408 (8th Cir. 1994)).

If the expert testimony is within the jury's knowledge or experience, then it remains subject to exclusion "because the testimony does not then meet the helpfulness criterion of Rule 702." *Id.* at 809 (quoting *United States v. Arenal,* 768 F.2d 263, 269 (8th Cir. 1985)).   Courts must guard against "invad[ing] the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Robertson v. Norton Co*., 148 F. 3d 905 ( 8th Circuit 1998). (See *Kennedy v. Schlosser* et al, C11 -1032 (N.D.Iowa  2012), where the court held that merely telling the jury what result to reach is not admissible.)  That is exactly what the Defendant is attempting to do in this case.  As in *Kennedy, supra*, Defendant's expert should not be allowed to recount the evidence, accept the evidence he finds more credible and then tell the jury Mr. Chandler was at fault.  That is not the purpose of an expert witness pursuant to Fed. R.Evid. 704.

b.  **Turner's opinions are not reliable or relevant.**

Rule 702 requires that the opinion be based upon sufficient facts or data. Fed R. Evid. 702(b).   Rule 702 further requires that expert testimony be based upon "knowledge".   Although exact certainty is not required, the term "knowledge" "does connote more than subjective belief or unsupported speculation."  *Pillow v. GMC*, 184 F.R.F. 304, 306 (E.D. Mo. 1998). "Proposed testimony must be supported by appropriate validation --i.e. 'good grounds,' based on what is known." *Dauber*t, 509 U.S. at 590.  The proponent of the evidence bears the burden of proving by a preponderance of the evidence that the conditions of admissibility exist.   Mr.  Turner's opinions  show  no reliance on sufficient facts or data but instead are purely speculative. He appears to have relied upon video taken by traffic control personnel of APAC, photos taken after the

accident by CIA and speculative conclusions as to what Mr. Chandler thought, saw, knew, "would have seen", remembered, or "suggests" in order to reach opinions as to cause of the accident.  All of these facts or data, are speculative interpretations made by Mr. Turner as to evidence that will be presented to the jury; i.e. he is not only invading the jury's decision-making ability as to the facts, he is also speculating constantly in order to formulate the numerous opinions that he reaches that are listed *supra*.  See Exhibit "A", Turner Report and Exhibit "B", Turner Rebuttal Report. For example, he bases his knowledge of "ill and/or fatigued driving" on his numerous "investigations" of crashes, and then speculates as to Mr. Chandler's medical condition, speculates as to facts that "may" have occurred, distracted driving (unsubstantiated), and speed (acknowledging that he has no determination of the speed of Mr. Chandler and he did not reconstruct, nor can he, the actual speed; instead he relied on a memo where a speculation was made by and data which Mr. Turner admits he did not examine!).  Most of his subsequent opinions, ironically, rely on all of these speculations.

Therefore, Mr. Turner's opinion is subjective belief and unsupported speculation that should be excluded pursuant to Rule 702 and cannot form the basis of Mr. Turner's opinion. Further, because Mr. Turner's opinion is based on speculation which is not and will not be admitted into evidence, it is irrelevant to the negligence of APAC in the duty they owed the driving public in the construction zone through which Mr. Chandler was traveling and/or the standard of care or breach of duty which are at issue in this case.  Mr. Chandler's contributory negligence, if any, may be relevant; but only for the trier of fact to decide, after hearing the actual evidence presented at trial.  If Mr. Turner's opinions -- based on his subjected and speculative decisions, and made by a man with inadequate

13

education, training or experience to make those opinions -- are allowed to be introduced or even mentioned to this trial jury, Mr. Chandler will not receive a fair trial pursuant to the Federal Rules of Evidence, case law and the principles of fair trial and justice required by the U.S. Constitution.

## III. CONCLUSION

For the foregoing reasons, and for others to be brought at hearing of this motion, the testimony of Defense's commercial motor vehicle expert, Scott L. Turner, should be excluded from trial.

RESPECTFULLY SUBMITTED, this the 11th day of April, 2014

s/Vicki L. Gilliam_____
Vicki L. Gilliam

Johnson Ogles
Arkansas Bar No. 89003
OGLES LAW FIRM, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, AR 72078
 (501) 982-8339
jogles@aol.com

Vicki L. Gilliam
Arkansas Bar No. 2002045
The Gilliam Firm, PLLC
P.O. Box 1303
Clinton, MS 39060
601-488-4044
Facsimile 601-488-4043
gilliam@gilliamfirm.com

Attorneys for Ted and Martha Chandler

## CERTIFICATE OF SERVICE

I, Vicki L. Gilliam, hereby certify that on the 11th day of April, 2014, a copy of the foregoing instrument was filed using the ECF electronic filing system which emailed copies to the parties listed below:

Ronald L. Harper    ron.harper@leitnerfirm.com    John Ogles   jogles@aol.com

Donald H. Bacon    bacon@fridayfirm.com

Frank L. Day        frank.day@leitnerfirm.com

s/Vicki L. Gilliam
Vicki L. Gilliam